UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT T. BRIMM,

               Plaintiff,                         CIV. NO. 15-11327

           v.                                HON. TERRENCE G. BERG

WELLS FARGO BANK, N.A., and U.S.
BANK NATIONAL ASSOCIATION, as
Trustee for SASCO Mortgage Loan
Trust 2006-WF3,

               Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (DKT. 8)**

      This is a consumer lending action in which Plaintiff Robert Brimm

("Plaintiff") seeks to set aside a completed sheriff's sale due to alleged improprieties

during the mortgage foreclosure process and Defendants' alleged refusal to grant

Plaintiff a mortgage loan modification.  Plaintiff's Complaint alleges six claims: (1)

bad faith, premised on Defendants' refusal to modify Plaintiff's mortgage; (2)

violation of the Real Estate Settlement Procedures Act (RESPA); (3) negligence,

based upon Defendants' alleged breach of a duty of modify Plaintiff's mortgage; (4)

wrongful foreclosure, premised upon Defendants' alleged failure to properly post

and publish the foreclosure notice and improper calculation of Plaintiff's past due

balance; (5) breach of contract and breach of implied covenant of good faith and fair

dealing, based again upon Defendants' refusal to modify Plaintiff's mortgage; and

(6) fraudulent misrepresentation, premised upon Defendants' allegedly unfulfilled promises to modify Plaintiff's mortgage and suspend foreclosure proceedings.

Defendants have filed a motion to dismiss or for summary judgment (Dkt. 8). Plaintiff filed a response brief (Dkt. 11), and Defendants filed a reply (Dkt. 12). The Court heard oral argument on December 16, 2015. Following the hearing, Plaintiff filed a supplemental brief with additional exhibits (Dkt. 14). Having considered the parties' arguments and the exhibits presented to the Court, Defendants' motion (Dkt. 8) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

On June 28, 2006, Plaintiff obtained a $275,000 mortgage loan from Wells Fargo (the "Loan") (Dkt. 1; Compl. at ¶ 6). The Loan refinanced two existing loans, and Plaintiff also received $3,516.22 "cash-out" at the closing (Dkt. 8, Ex. 1). The Loan was secured by a mortgage on the Property (the "Mortgage"). *Id*. The Mortgage was recorded. *Id*. The Mortgage was later assigned to US Bank, in its capacity as trustee of the SASCO Mortgage Loan Trust 2006-WF3. *Id*. at ¶ 7.

In July 2008, Plaintiff fell behind in making his mortgage payments (Dkt. 8, Ex. 3). Plaintiff remained in default into 2009 (Dkt. 8, Ex. 4). In April 2009, Defendant Wells Fargo agreed to a payment plan in an attempt to allow Plaintiff to catch up on his payments (Dkt. 8, Ex. 5). Despite this accommodation, Plaintiff remained behind in his mortgage payments into July 2009 (Dkt. 8, Ex. 6).

Defendant Wells Fargo continued to work with Plaintiff and, on or about July 23, 2009, agreed to modify the Loan (Dkt. 8, Ex. 7). Despite this modification, Plaintiff continued to default in making his payments.

Defendant continued to work with Plaintiff to assist him to become current on the Loan. For example, on April 22, 2010, Defendant agreed to modify the Loan a second time to capitalize past due interest and approximately $10,000 that Defendant had advanced on Plaintiff's behalf (Dkt. 8, Ex. 8). Despite this second modification, Plaintiff continued to default on making payments. In October 2010, Plaintiff filed for Chapter 7 bankruptcy (Dkt. 8, Ex. 9).

By June 2012, Plaintiff had again defaulted on the Loan, and his past due balance exceeded $39,000 (Dkt. 8, Ex. 15). Plaintiff then sought a Home Affordable Modification Program (HAMP) loan modification, but that request was denied as Plaintiff failed to provide all the required documentation (Dkt. 8, Ex. 16). Later, after a full review, Plaintiff's request for a HAMP modification was denied because the modified payment would be less than 25% of Plaintiff's monthly income (Dkt. 8, Ex. 17). Because Plaintiff's request for a loan modification was denied, Defendant declared the Loan in default (Dkt. 8, Exs. 18, 19).

Approximately six months later, on or about January 10, 2013, Plaintiff again requested a loan modification. Plaintiff was informed in writing at various times through 2013 that he simply did not qualify for either a HAMP or a non-HAMP modification because of HAMP limitations on income and because the Loan

had already been modified twice before (Dkt. 8, Exs. 20, 21, 22 and 23). Defendant did, however, agree to another repayment plan, during which Defendant was working with Plaintiff to obtain "Step Forward" assistance from the State of Michigan (Dkt. 8, Ex. 24). By August 2013, Plaintiff's Step Forward application was denied because the Loan's past due balance exceeded state limits. *Id.* However, Defendant offered to continue working with Plaintiff regarding further Loan assistance (Dkt. 8, Ex. 25). On September 30, 2013, filed for Chapter 13 bankruptcy protection (Dkt. 8, Ex. 26). Plaintiff's bankruptcy case was later dismissed, on December 18, 2013, when Plaintiff failed to appear for a meeting of creditors. *Id.*

On February 10, 2014, Plaintiff again requested mortgage assistance from Defendant (Dkt. 8, Ex. 27). Plaintiff was again sent paperwork to apply for HAMP assistance (Dkt. 8, Ex. 28). By April 1, 2014, Plaintiff's Mortgage was again referred to counsel for foreclosure (Dkt. 8, Ex. 29). On April 7, 2014, Defendant sought updated financial information for Plaintiff's request for a loan modification (Dkt. 8, Ex. 30). Once the requested documents were received, Plaintiff was told "there may be additional documents required before we can determine if you're eligible for mortgage assistance" (Dkt. 8, Ex. 31). However, the foreclosure process continued, and on April 16, 2014, US Bank, in its role as trustee, began a judicial foreclosure action, due in part to questions concerning one of the junior liens on the Property (Dkt. 8, Ex. 32).

On May 7, 2014, Plaintiff was informed in writing that he did not qualify for a HAMP modification (Dkt. 8, Ex. 33). The same day Plaintiff was informed that he

4

did not qualify for a non-HAMP modification or for any other repayment plan (Dkt. 8, Ex. 34). Plaintiff was also told that he could appeal those decisions. *Id.* On June 13, 2014, Plaintiff appealed of his mortgage assistance denial (Dkt. 8, Ex. 35). Plaintiff was also told that normal collection processes would continue (Dkt. 8, Ex. 36). On July 16, 2014, Plaintiff was informed of the options, in lieu of foreclosure, of agreeing to a surrender the deed to the lien holder or conducting a short-sale (a sale of the home for less than the outstanding amount of the mortgage indebtedness) in which the proceeds of the sale would be provided to the lender in payment of the loan. (Dkt. 8, Ex. 37). The record submitted by the parties does not indicate that Plaintiff availed himself of either of these options. Thus, on August 20, 2014, Plaintiff was told that the foreclosure sale had been scheduled for September 23, 2014 (Dkt. 8, Ex. 38). Two days earlier, on August 18, 2014, Plaintiff filed for Chapter 13 bankruptcy protection for a second time (Dkt. 8, Ex. 39).

On November 22, 2014, Plaintiff's bankruptcy case was dismissed (Dkt. 8, Ex. 42). On December 30, 2014, Plaintiff was informed that the Property would go to a sheriff's sale on January 6, 2015 (Dkt. 8, Ex. 43). That sale occurred as scheduled (Dkt. 8, Ex. 44).[1] The redemption period expired July 6, 2015. On March 30, 2015, Plaintiff filed this case challenging the foreclosure in the Oakland County Circuit Court (Dkt. 1). On April 10, 2015, Defendants removed the case to this Court. *Id.* The Court referred this matter to facilitation with Richard Hurford (Dkt. 5), a

---

[1] Plaintiff filed a supplemental brief (Dkt. 14) attaching correspondence between himself and the Consumer Financial Protection Bureau dated January and February 2016, relating to complaints that Plaintiff filed with that agency in early 2015.

facilitator specifically trained in settling mortgage foreclosure litigation.  However, facilitation did not result in a settlement.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.  Accepting all factual allegations as true, the Court reviews the Complaint in the light most favorable to the plaintiff.  *See Eidson v. Tennessee Dep't of Children's Servs.* 510 F.3d 631, 634 (6th Cir. 2007).  To survive a motion to dismiss, the Complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The Complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful.  *Id*. at 556.  Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

To the extent that a plaintiff alleges fraudulent conduct on the part of the defendants, such allegations also must satisfy the heightened pleading requirements of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *See* Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint must "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (internal quotation marks and citation omitted). At a minimum, the plaintiff must allege the time, place and contents of the misrepresentations upon which he or she relies. *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)).

In ruling on a motion to dismiss, the Court primarily considers the allegations in the Complaint; although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the Complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed part of the pleadings). Where "the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner*, 108 F.3d at 89.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

7

of law." *See* Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the

8

record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## ANALYSIS

As noted earlier, Plaintiff's Complaint (Dkt. 1) contains six counts: (1) Bad Faith; (2) Real Estate Settlement Procedures Act (RESPA) Violations; (3) Negligence; (4) Wrongful Foreclosure; (5) Breach of Contract; and (6) Fraudulent Misrepresentation.  These claims can be grouped into two broad categories: (A) claims related to Defendants' refusal to modify Plaintiff's mortgage; and (B) claims related to alleged improprieties that occurred during the foreclosure proceedings. Each claim is discussed below.

### I.    Plaintiff's Claims Related to Defendant's Refusal to Modify Plaintiff's Mortgage

#### A.  Plaintiff's Claims Seeking to Set Aside the Foreclosure

In Count I, Plaintiff alleges that Defendant acted in bad faith by not responding to Plaintiff's request for a loan modification, and therefore the foreclosure sale should be set aside.  However, Michigan law does not recognize an independent cause of action for bad faith.  *See Fodale v. Waste Management of Michigan, Inc.*, 271 Mich.App. 11, 35, 718 N.W.2d 827 (2006).  Furthermore, such a claim conflicts with Sixth Circuit precedent, which states that "[a]n alleged irregularity in the loan modification process...does not constitute an irregularity in the foreclosure proceeding." *Campbell v. Nationstar Mortgage*, 611 F. App'x 288, 294 (6th Cir. 2015) cert. denied, 136 S. Ct. 272 (2015) (finding the district court properly dismissed plaintiff's two mortgage-foreclosure cases where the plaintiff alleged

prejudice deriving solely from a failure to receive a loan modification); *see also Ashford v. Bank of Am., N.A.*, No. 13–12153, 2013 WL 5913411, at *3 (E.D. Mich. Oct. 31, 2013) (concluding that the manner in which the defendant "handled potential loss mitigation or modification...has no bearing on the foreclosure procedure itself"); *Shamoun v. Fed. Nat'l Mortg. Assoc.*, No. 12– 15608, 2013 WL 2237906, at *4 (E.D. Mich. May 21, 2013) (concluding that allegations that defendant prevented plaintiff from entering into a loan modification were insufficient to justify setting aside the foreclosure sale).

In Count III, Plaintiff claims that despite receiving a completed modification package in July 2014, which Plaintiff updated every month thereafter, Defendant was negligent in not reviewing or properly responding to the loan modification request.  Plaintiff relies on Defendant's duties under federal law, specifically the Home Affordable Mortgage Program (HAMP), to support his state law claim of negligence, citing to *Mik v. Federal Home Loan Mortgage Corp.*, 743 F.3d 149 (6th Cir. 2014).  However, as Defendant correctly points out, a plaintiff must still show prejudice to state a valid claim.  *See Kim v. JP Morgan Chase Bank*, N.A., 493 Mich. 98, 825 N.W.2d 329 (2012).  Plaintiff must show that he would have been in a better position to preserve his interest in the property absent the alleged noncompliance with the cited federal statute. The problem for Plaintiff in this case is that even if Defendant had properly reviewed Plaintiff's loan modification application, and even if Plaintiff qualified for a loan modification, the lender is not required to provide one. Without such a requirement, Plaintiff cannot demonstrate prejudice. Moreover,

10

"the Sixth Circuit has explicitly rejected similar claims, finding that lenders have no duty of care to evaluate loan modification applications under HAMP in Michigan." *Austerberry v. Wells Fargo Home Mortgage,* No. 15-CV-13297, 2015 WL 8031857, at *8 (E.D. Mich. Dec. 7, 2015) (citing *Rush v. Mac*, 792 F.3d 600, 605 (6th Cir. 2015)). Finally, on May 7, 2014, Plaintiff's application for a loan modification was reviewed by Defendant, and he was told that he did not qualify for a HAMP modification (Dkt. 8, Ex. 33). The applicable regulations, specifically 12 C.F.R. 1024.41(I), state that "[a] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." Accordingly, Plaintiff cannot now "bring an action for violation of the loss mitigation rule if the borrower has previously availed himself of the loss mitigation process." *See, e.g., Houle v. Green Tree Servicing*, *LLC*, 2015 WL 1867526, *3 (E.D. Mich., 2015).

As to Count IV, in which Plaintiff alleges wrongful foreclosure. This claim is premised on allegations that Defendant failed to provide Plaintiff proper notice under Michigan's foreclosure statute. However, Plaintiff "must do more than rest his case on speculative, future harm. He must establish prejudice (such as double liability) resulting from his failure to adhere to the [mortgage foreclosure] statute's requirements." *Carmack v. Bank of New York Mellon*, 534 Fed. App'x 508, 513 (6th Cir. 2013); *see also Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98; 825 N.W.2d 329, 337 (2012) (to establish an actionable defect under M.C.L. § 600.3204, a plaintiff "must show that [he] would have been in a better position to preserve [his]

interest in the property absent defendant's noncompliance with the statute"). Plaintiff's Complaint is silent on the matter of any actionable prejudice as required under *Kim* that stems from any alleged defect in the foreclosure process. Accordingly, Plaintiff has failed to state a viable claim for wrongful foreclosure. *See, e.g., Brown v. Citimortgage, Inc.*, 2015 WL 144621, *3 (E.D. Mich. 2015).

Furthermore, the redemption period following the sheriff's sale of the Property expired on July 6, 2015, Plaintiff's rights in, and title to, the property were extinguished. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187; 4 N.W.2d. 514 (1942); *Bryan v. JP Morgan Chase Bank*, 304 Mich. App. 708; 848 N.W.2d 482 (2014). This is true even though Plaintiff filed his suit before the redemption period expires. *See Overton v. Mortgage Elec. Reg. Sys.*, 2009 WL 1507342, *1 (Mich. App. May 28, 2009); *Awad v. General Motors Accep. Corp.*, 2012 WL 1415166, *4 (Mich. App., Apr. 24, 2012); *Jundy v. Wells Fargo Bank, N.A.*, 2015 WL 5697658, *4 (E.D. Mich., Sept. 29, 2015). Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made a clear showing of fraud, or irregularity. *See Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359-60 (6th Cir. 2013) (internal quotations omitted). A plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period. *See El–Seblani v. IndyMac Mortg. Servs.*, 510 Fed. App'x. 425, 429–30, No. 12–1046, 2013 WL 69226, at *4 (6th Cir. Jan. 7, 2013). The

rudimentary allegations of Plaintiff's "Wrongful Foreclosure" claim do not meet this "high standard," therefore, they must be dismissed.

For these reasons, Defendant's motion to dismiss Plaintiff's Bad Faith (Count I), Negligence (Count III) and Wrongful Foreclosure (Count IV) claims is granted.

## B. Defendant Is Entitled to Summary Judgment on Plaintiff's Claim that Defendant Violated RESPA

In Count II, Plaintiff claims that Defendant violated RESPA by not properly evaluating Plaintiff for a loan modification. "RESPA is a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement costs, and to protect them from high settlement fees and the potentially abusive practices of providers." *Augenstein v. Coldwell Banker Real Estate LLC*, No. 2:10–CV–191, 2011 WL 3837096, at *2 (S.D. Ohio Aug. 30, 2011).

Under the regulations that implement RESPA (known as "Regulation X"), 12 C.F.R. § 1024.41(c) and (f), certain obligations are imposed on the mortgage servicer. Section 1024.41(c) provides that a mortgage servicer who receives a "complete loss mitigation application" more than 37 days before a foreclosure sale, within 30 days shall: (i) evaluate the borrower for loss mitigation options and (ii) provide the borrower with notice of that determination including the specific reasons for the determination. Section 1024.41 (f)(1) prohibits a servicer from foreclosing on properties which have been delinquent for less than 120 days; while (f)(2) provides that if a borrower submits a complete loss mitigation application

13

within that 120-day period, the servicer may not make the first notice of foreclosure unless: (i) it has informed the borrower that they are not eligible for loss mitigation options, (ii) the borrower rejects such an option, or (iii) the borrower fails to perform under an agreement on loss mitigation.

RESPA also provides for enforcement of violations of 12 C.F.R. § 1024.41. *See* 12 C.F.R. § 1024.41(a) ("Enforcement and limitations. A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))"). Section 2605(f) provides, "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts ... In the case of any action by an individual, an amount equal to the sum of ... any actual damages to the borrower as a result of the failure; and ... any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

Plaintiff's main claim in this matter is that Defendant violated RESPA by failing to properly consider Plaintiff for a loan modification and notify him in writing as to why Defendant denied his request. Defendant argues that it is entitled to summary judgment on Plaintiff's RESPA claim for two main reasons: (1) Plaintiff already received a loan modification and other loss mitigation assistance and thus was not eligible for protection under RESPA; and (2) Defendant was exempt from any obligation under Regulation X because on May 7, 2014, Plaintiff was told that he did not qualify for a HAMP modification after a full review (Dkt. 8, Ex. 33). Accordingly, Defendant contends that Plaintiff simply cannot "bring an

14

action for violation of [RESPA's] loss mitigation rule if the borrower has previously availed himself of the loss mitigation process." Quoting *Houle v. Green Tree Servicing, LLC*, 2015 WL 1867526, *3 (E.D. Mich., 2015)

Plaintiff's Complaint alleged that Defendant violated several regulations under RESPA: 12 C.F.R. § 1024.41(c), because it received a complete loan modification package in July 2014, and did not evaluate Plaintiff's request within 30 days; 12 C.F.R. § 1024.41(d), because it "implicitly" denied Plaintiff a loan modification without providing Plaintiff with the reasons for the denial in writing; and 12 C.F.R. § 1024.41(f)(2), because it noticed Plaintiff's home for a foreclosure sale, despite the fact that Plaintiff submitted a complete loss mitigation application package in July 2014, and despite the fact that Plaintiff never failed to perform under a loss mitigation option nor received notice that he was rejected under a loss mitigation application. After reviewing the evidence presented by the parties, and the relevant legal authorities, it is clear that the record before the Court fails to raise a genuine issue of material fact as to Plaintiff's claims. Consequently, Defendant is entitled to summary judgment.

First, "Regulation X" of RESPA became effective on January 10, 2014. *See Campbell v. Nationstar Mortg.*, 611 Fed. App'x. 288, 297 (6th Cir. 2015). It provides that "[a] servicer is only required to comply with the requirements of this section for *a single* complete loss mitigation application for a borrower's mortgage loan account" 12 C.F.R. § 1024.41(i) (emphasis added). Defendant already considered, and denied in writing on May 7, 2014, a previous request from Plaintiff for a loan

15

modification (Dkt. 8, Ex. 33).[2] Thus, Plaintiff cannot bring a claim against Defendant that a later – July 2014 – request for a loan modification was somehow ignored.

Further, Plaintiff's argument that he did not receive the required notice for a denial of a loss mitigation application has no merit. *See Deming–Anderson v. PNC Mortg.*, 119 F.Supp.3d 635, 640–41 (E.D. Mich. 2015) (rejecting an identical claim because the defendant's letters informing the plaintiff that the "application was received but cannot be reviewed because the complete application was not received within the required timeframe before the foreclosure sale . . . provided sufficient reasons for why Plaintiff was being denied"). Plaintiff has failed to create a question of material fact with regard to whether he submitted a complete application for mortgage relief in July 2014 and, therefore, his claims relying on this fact being proved must be dismissed.

Moreover, even if Plaintiff had presented evidence sufficient to show that Defendant failed to comply with RESPA, Plaintiff has failed to show that any damages resulted from Defendant's actions. Plaintiff alleges that Defendant violated various provisions of RESPA and its corresponding regulations. However, the principal relief sought by Plaintiff – to set aside the sheriff's sale – is unavailable to him under RESPA. *See* 12 C.F.R. 1024.41 (providing that the provisions of this section may be enforced under 12 U.S.C. § 2605(f), which

---

[2] Plaintiff was also informed in writing on several previous occasions that he did not qualify for a loan modification, specifically, on December 1, 2012 (Dkt. 8, Ex. 17), on April 9, 2013 (Dkt. 8, Ex. 20), on April 11, 2013 (Dkt. 8, Ex. 21), on June 26, 2013 (Dkt. 8, Ex. 22), on July 30, 2013 (Dkt. 8, Ex. 23), and on August 21, 2013 (Dkt. 8, Ex. 25).

16

authorizes monetary damages only; specifically, actual damages resulting from RESPA violation and, in the case of "a pattern or practice of noncompliance," statutory damages not to exceed $2000); *Servantes v. Caliber Home Loans, Inc.*, 2014 WL 6986414 (E.D. Mich. Dec. 10, 2014).  In order to seek monetary damages for a RESPA violation, Plaintiff is required to make actual damage allegations, resulting from the failure to respond to plaintiff's Qualified Written Request ("QWR"), which are absent in this Plaintiff's Complaint. *See Drew v. Kemp-Brooks*, 802 F. Supp.2d 889, 898 (E.D. Mich. 2011); *Battah v. ResMAE Mortg. Corp.*, 746 F.Supp.2d 869, 876 (E.D. Mich. 2010).

Rather than properly alleging actual damages, Plaintiff asks the Court to set aside the foreclosure sale and order Defendants to complete a loan modification. However, RESPA does not provide a remedy that would set aside a completed foreclosure sale.  Therefore, Plaintiff's claims under RESPA will be dismissed as a matter of law.  Plaintiff's statement in his Complaint that he suffered "emotional damages" is also insufficient to sustain a claim under RESPA at this stage.  *See Austerberry v. Wells Fargo Home Mortg.*, No. 15–cv–13297, 2015 WL 8031857, at *7 (E.D. Mich. Dec. 7, 2015) (holding that a plaintiff seeking compensation for emotional damage under RESPA must provide more than "threadbare" claims, and must show "how [the] [d]efendant allegedly caused those damages").  As to his claim for financial damages, "because Plaintiff [has] failed to present any evidence that [he] submitted a complete request for mortgage assistance [in July 2014], it cannot be said that Plaintiff['s] loss of [his] home resulted from Defendant's failure to

17

respond to [his] request for assistance.  Rather Plaintiff['s] home was foreclosed upon because [he] failed to make payments to [his] servicer." *Dent*, 2015 WL 9694807, at *4; *see also Collins v. Wickersham*, 862 F.Supp.2d 649, 659 (E.D. Mich. 2012) ("The alleged injuries plainly resulted from Plaintiffs' failure to make loan payments and the ensuing foreclosure. Plaintiffs have not pleaded actual harm resulting from the alleged RESPA violations; their claim is therefore futile."); *Benford v. CitiMortgage, Inc.*, No. 11–12200, 2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("Citi's alleged failure to provide [the plaintiff] with...information did not result in foreclosure. Rather, Plaintiff's failure to make the loan payments triggered this course of events").

Accordingly, Defendant is entitled to summary judgment on Plaintiff's RESPA claims, and they are dismissed.

## II.   Plaintiff's Claims Related to Alleged Improprieties During the Foreclosure Proceedings Fail as a Matter of Law

### A.   Breach of Contract

In Count V, Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing implied in the parties' mortgage contract. "Michigan does not recognize an independent tort action for breach of a contract's implied covenant of good faith and fair dealing." *Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*, 767 F. Supp. 2d 793, 805 (E.D. Mich. 2011). However, a party may sue for breach of contract under Michigan law to enforce the implied covenant of good faith and fair dealing that arises when the opposing party "makes

18

its performance a matter of its own discretion." *Id.* (citing *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003)).

Here, Plaintiff does not allege how Defendant "made [its] performance a matter of [its] own discretion so as to give rise to the protections of an implied covenant of good faith and fair dealing." *Wheeler v. Long Beach Mortg. Co.*, No. 14-CV-14056, 2015 WL 1637619, at *4 (E.D. Mich. April 13, 2015*)); see also Goodwin v. CitiMortgage, Inc.*, No. 1:12-CV-760, 2013 WL 4499003, at *7 (E.D. Mich. Aug. 19, 2013) (unpublished) (dismissing good faith and fair dealing claim where plaintiffs failed to identify contractual provision promising exercise of discretion in evaluating application for loan modification); *Austerberry*, 2015 WL 8031857, at *8. The breach of contract claim fails to state a claim upon which relief can be granted, and is therefore dismissed.

### B.   Fraud

Finally, in Count VI, Plaintiff alleges that Defendant made false representations of fact, intentionally and successfully inducing Plaintiffs to forego challenging the foreclosure of their home. Defendant argues, inter alia, that Plaintiff has not pled his fraudulent misrepresentation claim with sufficient particularity. The Sixth Circuit has interpreted Federal Rule of Civil Procedure 9(b) to require a plaintiff raising a common law fraud claim to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

19

from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quoting

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2010)). Plaintiff relies on

the allegations in paragraph 50 of his Complaint, which identifies Defendant's

misrepresentations as follows:

a.  Stating in response to Plaintiff's multiple loss mitigation requests that he had a complete request in to Defendant and the sale would be suspended until Plaintiff was properly evaluated;

b.  Leading Plaintiff to believe that he would qualify for loss mitigation options in order to retain the family home;

c.  Repeatedly asking Plaintiff for the same documentation on multiple occasions and assuring Plaintiff that no foreclosure sale would take place;

d.  Falsely stating to Plaintiff that no foreclosure would take place during negotiations and completion of Plaintiff's request for assistance;

e.  Reassuring Plaintiff that it would give him consideration of his loan modification requests during numerous telephone conferences;

f.  Sending misleading and confusing documentation to Plaintiff regarding the availability of loss mitigation; and

g.  Sending misleading documentation to Plaintiff as to when and if foreclosure was to happen or that it had occurred.

These allegations do not meet the particularity standard, since they "do not identify

the content of the allegedly fraudulent statements, when they occurred, who made

them, or where they were made." *Wheeler*, 2015 WL 1637619, at *5.  Plaintiff has

therefore failed to state a fraudulent misrepresentation claim upon which relief can

be granted.  The claim is dismissed.

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss or for summary judgment (Dkt. 8) is **GRANTED**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2016

**Certificate of Service**

I hereby certify that this Order was electronically submitted on June 28, 2016, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager